UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| MR. and MS. DOE, individually and as parents and next friends of JOHN DOE, a minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:25-cv-00238-LEW |
| MAINE SCHOOL ADMINISTRATIVE DISTRICT NO. 60, | ) ) ) ) | |
| Defendant. | ) ) | |

## ORDER ON PLAINTIFFS' MEMORANDUM OF LAW

Plaintiffs Mr. and Ms. Doe ("the Parents") appeal the decision of a Maine Department of Education Hearing Officer denying their motion to quash a subpoena. For the following reasons, the Hearing Officer's decision will stand and the matter is remanded for further proceedings.

### BACKGROUND

The following facts are drawn from the parties' briefs and the Stipulated IDEA Administrative Record (ECF No. 23). The Parents filed a special education due process hearing request with the Maine Department of Education on behalf of their eight-year-old son on February 7, 2025 (ECF No. 23-1). A month later, Defendant Maine School Administrative District No. 60 ("the District") served a subpoena requiring the Parents to produce records of "any and all communication . . . between you, any of your family

members, and Amy Catling." Def.'s Subpoena at 2, ECF No. 23-4. Amy Catling is a non-attorney "educational advocate," engaged by the Parents. Pls. Mot. at 4.

On April 7, 2025, the Parents moved the Administrative Hearing Officer to quash the District's subpoena insofar as it requests attorney-client privileged communications involving Ms. Catling (ECF No. 23-5). The Parents argued that Ms. Catling is a client representative, and that communications between Ms. Catling and the Parents and communications between Ms. Catling and the Parents' attorneys are therefore attorney-client privileged under Maine law. *See* Me. R. Evid. 502(b). In support of that argument, the Parents provided an affidavit stating (1) that they "engaged Amy Catling to serve as an educational advocate for [their] son," (2) that they "authorized Ms. Catling to obtain professional legal services for [them] and to act on advice rendered as part of any professional legal services she obtained for [them]," (3) that Ms. Catling "acted as our representative in obtaining and acting on legal advice" from two attorneys,[1] and (4) that they are "exercising [their] privilege under Maine law to prevent Ms. Catling from disclosing the contents of any confidential communications she has had with [them] and/or [their] lawyers." Affidavit of Ms. Doe ¶¶ 1-4 (ECF No. 23-5 at 11). Opposing the Parents' motion to quash, the District argued that federal law governs, and that communications with Ms. Catling are not protected under federal law (ECF No. 23-6).

---

[1] The first attorney contacted declined the representation. The second attorney contacted is Plaintiffs' Counsel in this matter.

On April 25, 2025, the Hearing Officer issued a written order denying the Parents' motion to quash, concluding "that the communications between Ms. Catling and the Parents, at least until the point in time at which current counsel for the Parents was retained, are not privileged and are subject to subpoena by the School District."  Order on Parents' Motion to Quash at 4 (ECF No. 23-8)  Specifically, the Hearing Officer found that Rule 501 of the Federal Rules of Evidence applies to special education claims made primarily pursuant to the IDEA, and applying that rule, further determined that communications involving Ms. Catling are not privileged under federal common law.  Order at 3-4.  The Parents filed an action in the York County Superior Court challenging the Hearing Officer's decision on their privilege claim, which the District removed to this Court on the basis of federal question jurisdiction (ECF No. 5).[2]

## DISCUSSION

The IDEA establishes the framework for resolving disputes between parents and school districts, a cornerstone of which is the administrative due process hearing.  *See* 20 U.S.C. § 1415(f)-(h); 34 C.F.R. §§ 300.511(c)-(f), 300.512.   The IDEA sets certain requirements for these proceedings, *see id.*, but delegates to states the responsibility for conducting due process hearings and for determining the remaining details of how these proceedings are to be conducted.  *See* 20 U.S.C. § 1415(f)(1)(A); 34 C.F.R. 300.511(b). The Parents explain that IDEA due process hearings are therefore "creatures of state law," Pls. Mot. at 6, while the District characterizes these proceedings as "'creatures' of federal

---

[2] Plaintiffs previously filed a motion to remand (ECF No. 8), which was denied (ECF No. 12).

law that states are charged with administering," Def. Response at 8 (ECF No. 27).  The IDEA and federal regulations governing due process hearing procedures are silent on many evidentiary matters, including privilege.  Maine's Unified Special Education Regulations ("M.U.S.E.R."), however, specify that "[the] hearing officer shall not be bound by the rules of evidence applicable to the courts, but shall be bound by the rules of privilege recognized by law." M.U.S.E.R. § XVI.9.D.  This regulatory evidentiary provision does not specify which body of privilege law it refers to—Maine or federal—unless it means both.

Under the First Circuit's "involved oversight" standard, District Courts considering challenges to administrative IDEA decisions review the administrative record and make "an independent ruling" that is "tempered by the requirement that the court give due weight to the hearing officer's findings."  *Johnson v. Boston Pub. Schs.*, 906 F.3d 182, 191 (1st Cir. 2018).  This intermediate standard of review "falls somewhere between the highly deferential clear-error standard and the non-deferential de novo standard."  *Id.*

In this case, the Hearing Officer applied Rule 501 of the Federal Rules of Evidence, which directs that federal common law governs a claim of privilege (unless the U.S. Constitution, a federal statute, or a Supreme Court rule provides otherwise), except in civil cases where "state law supplies the rule of decision"—in which case, state law applies. Fed. R. Evid. 501.  To the extent that the Hearing Officer's decision applied Rule 501 to determine that federal common law developed in federal courts governs the Parents' claim of privilege, that analysis cannot be reconciled with First Circuit precedent holding that the Federal Rules of Evidence do not apply in IDEA due process hearings, unless otherwise

4

provided.  *See Johnson v. Boston Pub. Schs.*, 906 F.3d 182, 192-93 (1st Cir. 2018). [3]  Per

*Johnson*, state hearing officers conducting IDEA hearings may consider evidence that a

federal court would deem inadmissible.  *Id.* (holding that a hearing officer could weigh

evidence inadmissible in court under Federal Rule of Evidence 408); *see also* M.U.S.E.R.

§ XVI.9.D (first clause) (stating that a "hearing officer shall not be bound by the rules of

evidence applicable to the courts").  At the same time, Maine hearing officers are expected

to honor established privileges, including privileges established elsewhere in the law than

in federal courts and the Federal Rules of Evidence.  *See* M.U.S.E.R. § XVI.9.D (second

clause) (stating that a hearing officer "shall be bound by the rules of privilege recognized

by law").

Consequently, the question of whether the Parents can justify the withholding of

evidence based on a privilege recognized by Maine courts deserves consideration.

Because this is, in practical effect, an interlocutory appeal of an order denying a motion to

quash a subpoena, I consider the record to which the parties have stipulated to be complete

and turn to the matter of whether that record substantiates the claim of privilege under

---

[3] In *Johnson*, the First Circuit instructed that "administrative hearings are not bound by the Federal Rules of Evidence," noting that "[t]he rules governing [Bureau of Special Education Appeals] hearings explicitly decline to bind due process hearings to 'the rules of evidence applicable to courts.'" 906 F.3d at 192-93 (internal citation and modifications omitted).  The same is true of the rules that govern IDEA due process hearings in Maine.  *See* M.U.S.E.R. § XVI.9.D ("A hearing officer shall not be bound by the rules of evidence applicable to the courts, but shall be bound by the rules of privilege recognized by law.").  As a result, the Federal Rules of Evidence (including Rule 501) do not apply to IDEA due process hearings in Maine.  That is not to say that the federal common law of privilege would not apply—only that if it does, it is not because Rule 501 says so.  If federal common law does apply, it would be because "the rules of privilege recognized by law" include the federal common law rules of privilege.  M.U.S.E.R. § XVI.9.D.

Maine law.[4]  In another case I might remand the matter for the hearing officer to reconsider that question without addressing it in my order, but in this case I evaluate the record to avoid, hopefully, yet another interlocutory appeal.

Under both Maine and federal law, the party asserting privilege bears the burden to show that the claimed privilege applies.  *See In Re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011); *Pierce v. Grove Mfg. Co.*, 576 A.2d 196, 199 (Me. 1990).  To meet their burden of demonstrating that communications involving Ms. Catling are privileged, the Parents point to Rule 502 of the Maine Rules of Evidence.[5]  Rule 502 provides that a "client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of any confidential communication . . . [b]etween the client or the client's representative and the client's lawyer" or "between the client and his or her representative."  Me. R. Evid. 502(b)(1), (b)(4).  The Rule defines a "representative of the client" as "a person who has authority on behalf of the client to (A) [o]btain professional legal services;

---

[4] The parties filed a stipulated administrative record under seal on July 18, 2025 (ECF No. 23).

[5] Plaintiffs have not put forward any argument that the communications at issue would be privileged under federal common law.  Nor did they make any such argument before the Hearing Officer.  I do, however, harbor some doubt that Defendant (and the Hearing Officer) are correct that federal common law would not shield these communications—assuming Plaintiffs demonstrated they would have been privileged under Maine law.  *See In re Hampers*, 651 F.2d 19, 22-24 (1st Cir. 1981).  Federal courts "have the power to be flexible and adaptive with regard to the law of privilege," to be exercised with caution.  *In re Admin. Subpoena Blue Cross Blue Shield of Mass.*, 400 F. Supp. 2d 386, 389-90 (D. Mass. 2005); *see also Univ. of Pa. v. EEOC*, 493 U.S. 182, 189 (1990).  "As a matter of comity, federal courts recognize state privileges 'where this can be accomplished at no substantial cost to federal substantive and procedural policy.'"  *In re Admin. Subpoena*, 400 F. Supp. 2d at 390; *see also Green v. Fulton*, 157 F.R.D. 136, 139 (D. Me. 1994).  If a communication falls within Maine's attorney-client privilege, that fact is relevant to the District Court's determination of whether that communication ought to be shielded from disclosure under federal common law—particularly in the context of a civil action arising out of an IDEA due process hearing, which uniquely combines elements of federal and state law.

or (B) [a]ct on advice rendered as part of professional legal services."  Me. R. Evid.

502(a)(2).  The Advisory Committee Note to Rule 502 discusses this definition:

> Subsection (a)(2) defines "representative of the client" as one having authority to obtain legal services and to act on advice rendered pursuant thereto on behalf of the client.  This is an adoption of the so-called "control group" test.  It narrows the privilege, confining it to communications by *persons of sufficient authority to make decisions for the client*.  It would not protect communications from lower-level employees to lawyers to enable them to advise a decision-making superior.

Me. R. Evid. 502, Advisory Committee Note (Feb. 2, 1976) (emphasis added); *see also*

*Harris Management, Inc. v. Coulombe*, 151 A.3d 7, 14 (Me. 2016).  To qualify as a "client

representative" for purposes of Rule 502, then, that person must have authority to make

decisions for the client—not merely to advise the client.

In *Harris Management, Inc. v. Coulombe*, the Law Court rejected a claim of

privilege over communications involving a "representative," deciding that a "conclusory

affidavit" that set forth only "limited facts" was not enough to show that person was the

client's "legally authorized personal representative, imbued with the authority to make

decisions related to [the client's] legal services," as Rule 502 requires.  151 A.3d 7, 14-15

(Me. 2016).  In that case, the party claiming privilege substantiated that claim with an

affidavit stating that the purported representative "in many instances was authorized to act

on [the client's] behalf with respect to information and advice received from [the client's]

lawyers" and "participate[d] in decision-making."  *Id*.  This was insufficient to establish a

client-representative relationship for purposes of Rule 502.  *Id*.

Here, the only evidence that the Parents put forward to support their claim of privilege is an affidavit asserting that they "authorized Ms. Catling to obtain professional legal services for [them] and to act on advice rendered as part of any professional legal services she obtained for [them]," and that Ms. Catling "acted as [their] representative in obtaining and acting on legal advice" from the two attorneys that the Parents have consulted.  Doe Aff. ¶¶ 1-3.  This affidavit, which consists of a bare recitation of Rule 502(a)(2)'s definition of a client representative and provides only a conclusory description of the Parents' relationship with Ms. Catling, is not meaningfully different from that which the Law Court rejected in *Harris Management*.  It does not "specify what matters" Ms. Catling "had been authorized to act on," nor does it "demonstrate that [she] undertook or directed any specific action" on the Parents' behalf.  *Harris Management*, 151 A.3d. at 14-15.  The affidavit therefore does not suffice to establish that Ms. Catling qualifies as the Parents' "legally authorized personal representative," *id.* at 15, so as to bring her communications within Maine's attorney-client privilege.[6]

---

[6] The Hearing Officer, having determined that Rule 501 of the Federal Rules of Evidence applied to the Parents' privilege claim, made no findings as to Ms. Catling's status as a client representative under Rule 502 of the Maine Rules of Evidence.  When analyzing Ms. Catling's status as a third party for purposes of federal privilege law, the Hearing Officer observed that Ms. Catling was not "hired to assist an attorney in rendering legal advice," but was instead "hired by the Parents to seek and obtain legal services, as represented by the Parents."  Order at 4.  This line from the order is not fairly characterized as a determination by the Hearing Officer that Ms. Catling's relationship with the Parents satisfies Rule 502's definition of a client representative—it merely restates the conclusory representations made in the Parents' affidavit.

## CONCLUSION

Because the current record does not substantiate the Parents' claim of privilege based on Maine law, the Hearing Officer's order denying the Parents' motion to quash the District's subpoena will stand and the matter is remanded for further proceedings.

SO ORDERED.

Dated this 22nd day of October, 2025

/s/ Lance E. Walker
Chief U.S. District Judge